636 June 29, 2017 No. 36

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

KAYLAN MICHELLE WINN,
*Respondent on Review.*

(CC 12C46360; CA A154313 SC S064263)

On review from the Court of Appeals.*

Argued and submitted March 9, 2017, at the University of Oregon School of Law, Eugene.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Emily P. Seltzer, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Amanda Garty, Portland, filed the brief for *amicus curiae* Oregon Justice Resource Center.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer, Nakamoto, and Flynn, Justices.**

BREWER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings consistent with this decision.

_____

* Appeal from Marion County Circuit Court, Albin W. Norblad, Judge. 278 Or App 460, 375 P3d 539 (2016).

** Baldwin, J., retired March 31, 2017, and did not participate in the decision of this case.

**BREWER, J.**

This is the second of two companion cases that implicate, for purposes of Article I, section 9, of the Oregon Constitution, the standard for determining the scope of a criminal defendant's consent to a law enforcement officer's request to search an item of personal property. In *State v. Blair*, 361 Or 527, ___ P3d ___ (2017), we reviewed a trial court's determination that the defendant's consent to a police officer's generalized request to search his backpack extended to the opening of a closed container inside the backpack. We concluded that the scope-of-consent inquiry is a factual one, directed at what the defendant actually intended. Because opposing inferences were permissible based on the record in that case, and because it was apparent that the trial court may not have appreciated the factual nature of the inquiry, we reversed and remanded for that court to determine the scope of the defendant's consent under the correct standard.

In the present case, we review a trial court's determination that defendant's consent to a courthouse security officer's generalized request to search her purse by hand, after running it twice through a courthouse x-ray screening device, extended to opening a small compact case that the officer found inside the purse. For the reasons explained below, as in *Blair*, we vacate defendant's conviction and remand to the trial court to reconsider its suppression ruling under the correct legal standard.

FACTS AND PROCEDURAL HISTORY

The record discloses the following undisputed facts. Under an administrative policy of the Marion County Sheriff's Office, all persons entering the Marion County Juvenile Court must be screened by security personnel before being admitted into the building. The required screening involves a magnetic scan of the person's body (that is, walking through a metal detector) and an x-ray scan of his or her belongings, and may also involve additional searches, including hand searches of purses and bags. Under the policy, security personnel must obtain a person's consent before searching any of his or her belongings by hand. If the person refuses to consent to such a hand search, they cannot bring the item into the building. Signs posted at the entrance of

the building warn that persons entering the building are subject to search. The presiding judge also has ordered the posting of other signs at the entrance of the building, warning that firearms and other weapons are not permitted in the building.

On her way to attend a juvenile court proceeding, defendant stopped at the security checkpoint just inside the courthouse entrance, placed her purse on the conveyor belt to be scanned, and walked through the body scanner. The screener at the checkpoint, Spencer-Wold, ran the purse through the x-ray scanner and saw images of what appeared to be a compact and a spoon—objects that she thought might be "some sort of drug paraphernalia." After scanning the purse a second time, with defendant's permission, Spencer-Wold asked defendant, "May I please search your purse?" Defendant responded in the affirmative. While searching the purse by hand (which Spencer-Wold did in defendant's presence), Spencer-Wold found a small, opaque compact, which she opened. Inside the compact, she saw a tiny plastic baggie filled with a white powder. Suspecting that the powder contained drugs, Spencer-Wold contacted a Marion County deputy sheriff, who arrested defendant on suspicion of possession of a controlled substance. Defendant was charged with unlawful possession of methamphetamine, ORS 475.894, when the substance was later identified as methamphetamine.

Before trial, defendant moved to suppress the evidence of contraband found inside the compact, arguing that the warrantless search of the compact violated her rights under Article I, section 9, on the ground that the search was not justified under an exception to the warrant requirement. At the ensuing hearing, the state asserted that the search was a lawful administrative search, but defendant remonstrated that the administrative search exception to the warrant requirement was inapplicable because the search had not been conducted in accordance with a valid administrative search policy.[1] When the state insisted that, in all events, defendant had consented to the search, defendant responded that her consent to a search of her purse by hand

---

[1] The administrative search exception is not at issue on review.

did not extend to opening small, closed containers inside the purse, like the opaque compact in which the drug evidence was discovered. The trial court ultimately denied defendant's motion to suppress, ruling that her consent to the screener's generalized request to search her purse included consent to open and search all closed containers inside the purse, including the compact. After a stipulated facts trial, the court convicted defendant of the charged offense.

On appeal, the Court of Appeals reversed. In keeping with its own test for determining the scope of consent to a search under Article I, section 9,[2] the court considered what a "typical, reasonable person" would have understood from Spencer-Wold's request for consent to search and defendant's response, in light of the totality of surrounding circumstances. *State v. Winn*, 278 Or App 460, 465, 375 P3d 539 (2016). The Court of Appeals opined, first, that a reasonable person would not have viewed defendant's response to Spencer-Wold's request as an expression of consent to search closed containers inside the purse, in the absence of other surrounding circumstances that would have indicated that Spencer-Wold was looking for something that could have been hidden inside such containers. *Id.* at 465-66, 468. The court observed that there was no evidence of such circumstances in the record, and that, in fact, the evidence showed that a reasonable person would have inferred that Spencer-Wold was looking for guns and other weapons—items that could *not* be hidden inside a small container like a compact. *Id.* at 470. The Court of Appeals therefore concluded that the state had failed to establish that Spencer-Wold's search of the compact comported with the scope of the consent that defendant had given, that the search therefore was unlawful, and that the trial court had erred in denying defendant's motion to suppress. *Id*. at 471.

On review, the state does not challenge the test that the Court of Appeals used to determine whether the scope of defendant's consent to search her purse extended to closed containers inside the purse. Instead, the state asserts,

---

[2] *See, e.g.*, *State v. Delong*, 275 Or App 295, 301, 365 P3d 591 (2015); *State v. Helow*, 171 Or App 236, 240-41, 15 P3d 103 (2000); *State v. Arroyo-Sotelo*, 131 Or App 290, 296, 884 P2d 901 (1994).

consistently with the Court of Appeals' test, that the scope of a person's consent should be determined by what a reasonable person would understand in light of the totality of the circumstances. The state argues, though, that the Court of Appeals failed to draw a necessary inference from defendant's unqualified expression of assent to Spencer-Wold's generalized request. As it argued in *Blair*, the state asserts that, in the present circumstances, a reasonable person would have understood the exchange as culminating in defendant's consent to search her purse *and any* closed containers found inside because (1) the security officer, Spencer-Wold, had used the general term "search"—a word that commonly is understood to mean a careful, thorough, rigorous inspection of an item; and (2) in view of Spencer-Wold's status as a courthouse security officer, a reasonable person would have understood that she would be looking for any items that cannot legally be brought into the courthouse, including drugs that might be hidden in small "nested" containers inside larger containers.

Defendant responds that the state's proposed rule is inconsistent with the standard that the state accepts as controlling. Moreover, defendant argues, a typical reasonable person would *not* understand an unqualified affirmative response to an officer's generalized request to search a purse as including consent to open closed containers inside the purse, *unless* there were circumstances that would reasonably indicate that the officer was searching for something— like drugs—that could be hidden inside those containers. In this case, defendant contends, such circumstances are not present; rather, according to defendant, the surrounding circumstances would have led a reasonable person to believe that Spencer-Wold wanted to search the purse for guns or other weapons—items that would *not* fit inside a small compact.

## ANALYSIS

Much of the parties' disagreement here has been resolved by our decision in *Blair*. In that case, we considered whether a defendant's unqualified affirmative response to a police officer's request to search his backpack authorized the opening of a closed container—a knotted plastic

bag—that the officer found inside the backpack. 361 Or at 529-31. Although the parties in *Blair* did not challenge the standard that the Court of Appeals had applied in that case, they differed with respect to how a common fact pattern—a defendant's affirmative response, without qualification, to a law officer's generalized request to search—would play out under that standard. The state insisted—as it does here— that an unqualified affirmative response to a generalized request to search presumptively would constitute consent to search any closed container found inside the stated object of the search because a reasonable person would understand such an exchange in that way. The defendant countered that the state's "default" rule was inconsistent with the standard that the Court of Appeals had applied. *Id*. at 532-33.

We resolved the controversy in *Blair*, first, by considering whether the "typical reasonable person" test that the Court of Appeals had adopted was, in fact, the correct standard for determining the scope of a defendant's consent to search under Article I, section 9. In rejecting that test, we concluded, instead, that,

> "[i]n determining whether a particular search falls within the scope of a defendant's consent, the trial court will determine, based on the totality of circumstances, what the defendant actually intended."

*Id.* at 537. The resulting determination, we held, is a factual one, which must be upheld on appeal or review if supported by evidence in the record. *Id*. at 537-38. We also recognized that where, based on the totality of circumstances, the defendant's intent with respect to the scope of her consent is unambiguously expressed, that manifestation of intent is controlling. *Id*. at 538.

We further concluded in *Blair* that the state's proposed default rule—that an unqualified affirmative response to a police officer's generalized request to search an item of personal property extends to opening and inspecting any closed container contained therein—was incompatible with that standard, and we therefore rejected it. *Id*. at 538-39. Because we concluded that the defendant's manifestation of intent in *Blair* was susceptible to opposing inferences, and because it was not apparent that the trial court had

understood the scope of consent determination to be a factual inquiry, we vacated the defendant's conviction and remanded to give the trial court the opportunity to determine the scope of the defendant's consent under the correct standard. *Id*. at 539-42.

## APPLICATION

In light of *Blair*, we initially consider whether, in light of the surrounding circumstances, defendant unambiguously manifested consent—or denial of consent—to the opening of any small closed containers, like the compact in question, that Spencer-Wold might encounter while searching the purse. We conclude that she did not: As in *Blair*, in view of the surrounding circumstances, defendant's affirmative response to Spencer-Wold's generalized request to search gave rise to competing inferences with respect to the scope of her consent.

To amplify: On the one hand, certain aspects of the courthouse screening process would support an inference that defendant understood that Spencer-Wold was looking for only firearms and other weapons, and that her seemingly unqualified consent to a search of her purse therefore did not extend to opening closed containers inside the purse that were too small to hold any such items. Inasmuch as all people and items entering the building were subject to the screening process, it would have been evident to anyone undergoing screening that the process primarily was directed at keeping certain dangerous items out of the building, rather than at identifying persons who might be engaging in criminal conduct. That fact, standing alone, could have suggested to defendant that screeners were only looking for items like firearms and other weapons that could pose a threat to courthouse security. The presence of signs at the entrance of the building prohibiting firearms and other weapons supported that inference, as did the fact that part of the screening process—the body scan—could only detect the presence of metal.

On the other hand, the interaction preceding Spencer-Wold's request to search defendant's purse by hand would support an inference that defendant understood, at that point, that Spencer-Wold had seen suspicious items

such as drugs or drug paraphernalia inside a container within the purse in the two x-ray scans and, therefore, that her unqualified assent to Spencer-Wold's generalized request included consent to open any closed container that could hold such items. Stated differently, even if defendant initially had understood that the routine scanning of her person and purse would be focused on the possible presence of weapons, the subsequent request to search the purse by hand after two runs through the x-ray scanner would support the inference that the officer had refocused her attention on contraband that might be hidden inside the purse, including the drugs inside the compact. Under those circumstances, a finder of fact reasonably could infer that, despite the presence of signs prohibiting bringing weapons into the courthouse, defendant understood that Spencer-Wold's request to search her purse by hand would extend to opening closed containers inside the purse that might contain other contraband, and that her unqualified expression of assent to Spencer-Wold's request also extended that far.

Because evidence in the record would support either of those opposing inferences, we cannot conclude that defendant's unqualified expression of assent to Spencer-Wold's request to search her purse by hand was unambiguous with respect to the scope of her consent. Instead, the scope of consent determination requires the resolution of those competing inferences. *Blair*, 361 Or at 537. The trial court's written decision indicates that the court did not resolve that factual issue but, instead, purported to determine the scope of defendant's consent based on some version of the state's proposed default rule that we have now rejected. *See id.* at 538-39 (rejecting rule that consent to search an item presumptively extends to all things contained in item if defendant places no restrictions on search). Accordingly, as in *Blair*, we must remand to the trial court to determine the scope of defendant's consent under the correct standard.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings consistent with this decision.