Submitted February 9, affirmed December 22, 2021

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MEGGAN ADRIANNE CROSS,
*Defendant-Appellant.*

### Douglas County Circuit Court
18CR03843; A171316

502 P3d 753

Defendant appeals a judgment of conviction for four felony drug offenses, assigning error to the trial court's denial of her motion to suppress evidence and its instruction to the jury, over her objection, that it could return nonunanimous guilty verdicts. *Held*: (1) The trial court did not err in denying defendant's motion to suppress because defendant's expression of consent to search gave rise to competing inferences regarding the scope of that consent and the trial court's factual determination that defendant actually intended the scope of her consent to encompass the brown leather bag in which the evidence was ultimately discovered was supported by the record. (2) Although the trial court erred in giving a nonunanimous jury instruction, because the jury's verdict was unanimous on all counts, that error was harmless.

Affirmed.

Ann Marie Simmons, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

**DeVORE, P. J.**

Defendant appeals a judgment of conviction for four felony drug offenses. She assigns error to (1) the denial of her motion to suppress evidence and (2) an instruction to the jury, over her objection, that it could return nonunanimous guilty verdicts. Although defendant is correct that the jury instruction was given in error, *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), her second assignment is unavailing because the jury was unanimous on all counts, *State v. Flores Ramos*, 367 Or 292, 319-20, 478 P3d 515 (2020). As to her first assignment, we conclude, for the reasons that follow, that the court did not err in denying defendant's motion to suppress. We affirm.

The essential facts are undisputed. Oregon State Police Detective Nibblett was dispatched to the scene of a single-vehicle crash and contacted defendant, the driver, who was in the back of an ambulance about a quarter mile north of the crash. Defendant had a brown leather bag with her (which the trial court also refers to as a "satchel"). Nibblett knew from emergency personnel on the scene that defendant might have been under the influence of intoxicants. Nibblett began asking defendant questions, and she noticed a slight odor of an alcoholic beverage on defendant's breath. Defendant's speech was also slightly slurred. At that point, Nibblett believed that she had reasonable suspicion of driving under the influence of intoxicants (DUII). Defendant offered that she might have an arrest warrant for unlawful delivery from another state, but that she was in the process of getting it quashed.

After defendant volunteered the information about the possible warrant, Nibblett said that she was going to check on that and asked defendant if she had "any weapons or anything like that," to which defendant responded, "I had a pistol in my truck," and started reaching for the brown bag. Nibblett moved the bag closer to herself and told defendant, "Don't dig in it," "Do, do not touch the bag." Defendant said, "Understood. I think it's still in, it's just that it might be in my purse." Nibblett radioed dispatch to run the warrant and, among other things, asked defendant how much

she had had to drink. Defendant replied that she had "drank some" after getting out of her truck after the accident.

Nibblett requested defendant's consent to search for the gun:

> "OFFICER:   Okay. Alright. So to make sure for everybody's safety, will you let me search this bag to make sure that the handgun is not in there? If it is in there, then I will secure it.
>
> "[DEFENDANT]:   If it's in there, it's in my purse.
>
> "OFFICER:   Is your purse in there?
>
> "[DEFENDANT]:   It's right on the top.
>
> "OFFICER:   May I search that?
>
> "[DEFENDANT]:   Yeah."[1]

Nibblett testified at the suppression hearing that her question "May I search that?" was a request to search the brown leather bag.

After patting down defendant, Nibblett began searching the bag.[2] She asked defendant, "Anything else in here that I need to know about?" and "No needles and no knives? I just don't want to get stuck or cut." Defendant responded, "Okay. No. There's nothing in there." Nibblett also asked defendant about the size of the gun, and defendant replied that it was a "snub nose 357" and "it's probably in the truck." Nibblett said, "Okay. So, and I want to make sure it's not hiding in here." Nibblett continued to search the bag and found a 1.75-liter bottle of vodka that was about two-thirds empty. She also discovered a locked metal box, labelled "personal vault"; the corner of a plastic bag was sticking out of the box, which, according to

---

[1] This colloquy is taken from the transcript of a recording from the dashboard camera on Nibblett's patrol car, which was admitted as an exhibit and played for the trial court at the suppression hearing. Because Nibblett was wearing a shoulder microphone that was also recording, the audio is largely audible. The video at this point in the encounter shows only the back lights of the ambulance, not inside of it.

[2] Neither the audio recording nor Nibblett's testimony reveal any details about the search of the purse, except that Nibblett testified that the purse was inside of the brown leather bag and that she did not find a gun in her search. As noted, the video recording is unhelpful in that regard.

Nibblitt, was consistent with the type of bag typically used for carrying various kinds of drugs. As noted, Nibblett did not find a gun.[3] Nibblett seized the vault and subsequently obtained a warrant to search it. Based on its contents, defendant was charged with the drug offenses at issue in this case.

Before trial, defendant moved to suppress the evidence resulting from the search, arguing that it was inadmissible under Article I, section 9, of the Oregon Constitution because (1) Nibblett's inquiry about weapons was unlawful, and (2) the subsequent search exceeded the scope of her consent, which was limited to the purse inside the bag, not the bag itself. The state disagreed on both counts; it also argued that the search was justified as a search incident to arrest for obstructing governmental administration and as an officer-safety search, and that, even if the search was unlawful, suppression was not warranted because the evidence would have been inevitably discovered when the bag was brought to the Oregon State Police office.

The trial court denied the motion, concluding that Nibblett's inquiry about weapons was justified for safety reasons and that defendant's consent to search was not limited to the purse, but encompassed the larger brown bag as well. The court also noted that the search of the bag was justified as a search incident to arrest based on probable cause of DUII.

On appeal, defendant challenges the denial of the suppression motion, arguing that (1) the state failed to establish that Nibblett's weapons inquiry was reasonably related to the purposes of the stop as set out in *State v. Jiminez*, 357 Or 417, 353 P3d 1227 (2015), and further explained in *State v. Miller*, 363 Or 374, 422 P3d 240, *adh'd to as modified on recons*, 363 Or 742, 428 P3d 899 (2018); (2) even if the inquiry was proper, Nibblett exceeded the scope of defendant's consent to search under *State v. Blair*, 361 Or 527, 396 P3d 908 (2017), when she searched the brown leather bag; and (3) the discovery of the vault box and the drugs therein derived from the unlawful police conduct and the

---

[3] The gun was later located on the seat of defendant's truck under a sweater.

state failed to establish that the evidence would have been inevitably discovered.

       In reviewing the denial of a motion to suppress, "we are bound by the [trial] court's findings of historical fact if the evidence in the record supports them. To the extent that the trial court failed to make express findings on pertinent historical facts, we will presume that the trial court found those facts in a manner consistent with its ultimate conclusion." *Miller*, 363 Or at 377 (internal citations omitted); *see also State v. Backstrand*, 354 Or 392, 405 n 12, 313 P3d 1084 (2013) (noting that "[a] trial court's findings of historical fact are binding on an appellate court and, if the trial court does not make express findings on all pertinent issues, the appellate court will view the record in a light most favorable to the trial court's ruling and presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion").

       We reject defendant's argument regarding the weapons inquiry without discussion and turn our focus to defendant's argument that Nibblett exceeded the scope of defendant's consent when she searched the brown leather bag and discovered the personal vault.[4] The question whether a particular search falls within the scope of a defendant's consent requires the trial court to determine, as a factual matter based on the totality of the circumstances, what the defendant actually intended. *Blair*, 361 Or at 537. If the pertinent factual circumstances are disputed, the court must determine the facts. *Id.* at 537 n 4. And the appellate court is bound by the trial court's factual findings if they are supported by constitutionally sufficient evidence. *Id.* at 537-38. Importantly, however, "where, after considering those circumstances, the defendant's intent with respect to the scope of consent is unambiguously expressed, that manifestation of intent is controlling." *Id.* at 539; *see also State v. Winn*, 361 Or 636, 643, 396 P3d 926 (2017) (initial inquiry is whether, in light of the surrounding circumstances, the defendant unambiguously manifested consent or denial of consent).

---

   [4] Defendant does not argue that Nibblett's request for consent to search was itself unlawful.

		In this case, the trial court reflected on the request to search and defendant's consent, observing:

> "[T]here was a request for permission to search the satchel. And I think, further, the purse. There was consent. And there was, frankly, a very low key and kind of conversational discussion about what it was that the Officer was locating in the satchel, indicating that she couldn't find the gun and, you know, asking about some of the other items that were in there, up to and including the gray metal container. *There was nothing about that conversation or about the Defendant's consent that causes me to believe that she was limiting her consent to her purse.*"

(Emphasis added.)

		Defendant argues that the court erred because her *unambiguous* intent was to limit her consent to a search of the purse. In support of that proposition, she contends that, as a matter of English grammar, Nibblett's request, "May I search *that*?" (emphasis added) in the colloquy quoted above, 316 Or App at 508, can only be understood to refer to her purse. Consequently, in defendant's view, her answer, "Yeah," can also only mean the purse, and that "unambiguous" expression of her intent with respect to the scope of the search is thus controlling.

		We disagree that defendant unambiguously manifested her intention to consent to a search only of her purse located within the brown leather bag based on that exchange. Nibblett began the conversation (after learning that defendant had a gun) by saying, "Okay. Alright. So to make sure for everybody's safety, will you let me search *this bag* to make sure that the handgun is not in there?" (Emphasis added.) Defendant does not dispute that "this bag" was a reference to the brown leather bag. Although defendant did not directly answer the question, explaining, "If it's in there, it's in my purse," in the context of the exchange as a whole, defendant's answer, "Yeah," to Nibblett's subsequent question, "May I search that?" could also be understood as granting permission to search both the purse *and* the bag—that is, the bag and everything in it, including the purse.

		In light of the fact that Nibblett also told defendant that the purpose of the search was to keep everyone safe,

it is not unassailable that defendant would have understood Nibblett's request to be limited to the purse and thus intended her assent to also be so limited. As was the case in *Winn* (and *Blair*), in view of the surrounding circumstances, defendant's expression of consent "g[ives] rise to competing inferences with respect to the scope of [that] consent"; consequently, her intent is not, as she contends, unambiguously manifest. *Winn*, 361 Or at 643; *see also Blair*, 361 Or at 540 ("[C]ompeting inferences could be drawn from both the officer's generalized request and defendant's unqualified response with respect to what defendant actually understood to be the scope of the officer's request and what defendant intended by his responsive manifestation of consent.").

The question then is whether the trial court's factual determination, based on the totality of the circumstances, that defendant actually intended the scope of her consent to encompass the brown leather bag is supported by the record. We conclude that it is. The trial court apparently credited Nibblett's testimony that she asked for and received consent to search the brown leather bag. The trial court also found, and the record bears out, that Nibblett and defendant continued to converse in a "very low key" manner about the various different items that Nibblett found as she searched the bag.

At no point did defendant request that Nibblett stop looking through the bag or protest that she had only given permission to search the purse that was inside the bag, not the bag itself. That also supports an inference that defendant intended the scope of her consent to include the bag. *Cf. Blair*, 361 Or at 541 (rejecting the state's argument that an inference could be drawn that the defendant's generalized consent to search his backpack was intended to include the search of a grocery bag found in the backpack based on the defendant's failure to object to the officer opening the grocery bag, where there was no evidence to support the assumption that the defendant had the opportunity to object; noting that, "defendant might not have even realized that [the officer] was opening the bag until after the fact"). The record reflects that defendant had ample opportunity to object if she thought that Nibblett was exceeding the scope of her intended consent, yet she did not.

In sum, the evidence and permissible inferences derived therefrom support the trial court's factual determination that defendant actually intended the scope of her consent to include the brown leather bag, and we are thus bound by it. *Winn*, 361 Or at 642; *Blair*, 361 Or at 537-38. Consequently, we affirm.

Affirmed.